IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| WILLIE J. STARR<br>ADC # 109194 | | PLAINTIFF |
| v. | NO. 4:20-CV-00064 JM/JTK | |
| ESTELLA BLAND and DR. AARON M. SMITH | | DEFENDANTS |

### BRIEF IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiff, while incarcerated, filed this 42 U.S.C. §1983 lawsuit on January 15, 2020, against Defendants Estella Bland (Ms. Bland) and Dr. Aaron M. Smith (Dr. Smith) alleging that they violated his constitutional rights.

Because plaintiff failed to exhaust each of his claims as to all time frames, all unexhausted claims/time frames must be dismissed as a matter of law. Therefore, defendants request that their motion for partial summary judgment be granted and that the claims be limited to the times and encounters exhausted by plaintiff.

### II. STANDARD OF REVIEW

Summary judgment is appropriate if there are no disputed issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Rochling v. Dep't of Veterans Affairs, 725 F.3d 927 (8th Cir. 2013). The Court must view the evidence in the light most favorable to the non-moving party and determine whether all of the evidence points one way, giving him the benefit of all reasonable factual inferences. Id. at 937, citing Spirtas Co. v. Nautilus Ins. Co., 715 F.3d 667, 670 (8th Cir. 2013). A plaintiff must establish a clear violation of a constitutional right to prevail upon a section 1983 claim. Mahers v. Harper, 12 F.3d 783, 785 (8th

Cir. 1993).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court articulated guidelines for applying Rule 56 to defense motions for summary judgment stating, "the plain language of Rule 56C mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex at 322.  The Court explained that, in such a situation, "there could be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex at 322-23.

Therefore, once a motion is made, the burden shifts to the Plaintiff to offer "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992) (quoting Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 681 (9th Cir. 1985). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989)(emphasis added).

Moreover, if the plaintiff fails to demonstrate the existence of a genuine issue of material fact by offering significant probative evidence, the defendant is entitled to judgment in his favor as a matter of law. Buettner v. Eastern Arch Coal Sales Co., 216 F.3d 707, 718 (8th Cir. Mo. 2000) quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (internal quotations omitted.). A non-movant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163 (8th Cir. 1993).

Broad, conclusory statements unsupported by facts are insufficient to support a § 1983 cause

of action. Ellingburg v. King, 490 F.2d 1270, 1271 (8th Cir. 1974); Morton v. Becker, 793 F.2d 185 (8th Cir. 1985). Conclusive assertions of ultimate fact are entitled to little weight when determining whether a non-movant has shown a genuine issue of fact sufficient to overcome a motion for summary judgment supported by complying affidavits. Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir. 1984). Summary judgment is designed to remove such factually unsubstantial cases from the crowded district court dockets. Smith v. Marcantonio, 910 F.2d 500, 502-503 (8th Cir. 1990). Whether or not a claim exists against medical defendants is solely a question of law for this Court to decide.

### III.  STATEMENT OF FACTS

Defendants have separately filed a statement of facts pursuant to Local Rule 56.1. They incorporate those facts herein and adopt them by reference. Those relevant facts are also set forth in the argument below.

### V.  ARGUMENT
### Failure To Exhaust

**A.    THE LAW**

According to the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e, plaintiff is required to exhaust all administrative remedies before he can bring a § 1983 action regarding prison conditions. Specifically, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." Id..

"Congress has mandated exhaustion", eliminating the courts' discretion to excuse exhaustion. Booth v. Churner, 532 U.S. 731, 739, 741 (2001). The PLRA "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions." Id. at 733-734. More

to the point, administrative remedies must be exhausted before an inmate files a § 1983 action. Johnson v. Jones, 340 F.3d 624, 627-628 (8th Cir. 2003). "If exhaustion was not completed at the time of filing, dismissal is mandatory." Id. at 627.

Technical compliance with all administrative requirements for exhaustion is mandatory under the PLRA. Woodford v. Ngo, 126 S. Ct. 2378, 165 L. Ed. 2d 368; 2006 U.S. Lexis 4891 (2006). "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. . . . Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford at 2385-2386 (emphasis added).

The law on exhaustion is strict. In Ross v. Blake, 136 S. Ct. 1850 (2016) the Supreme Court made it clear that, aside from very narrow exceptions, there are "no limits on an inmate's obligation to exhaust," meaning a court may not excuse failure to exhaust by using judicial discretion to create exceptions. Id. at 1856-57. **The grievance procedure is controlling.** "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but **it is the prison's requirements . . . that define the boundaries of proper exhaustion.**" Jones v. Bock, 549 U.S. 199, 218 (2007).

"The Court is not free to create, on equitable grounds, an exception that Congress did not place in section 1997e." Bailey v. Hobbs, 5:11CV00031, 2012 U.S. Dist. LEXIS 103316 (E.D. Ark. July 25, 2012) citing Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000); Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726, 80 L. Ed. 2d 196 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be

disregarded by courts out of a vague sympathy for particular litigants."). Plaintiff's subjective beliefs are insufficient to circumvent the PLRA's exhaustion requirement. See Lyon v. Vande Krol, 305 F.3d 806 (8th Cir. 2002) citing Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156, 148 L. Ed. 2d 977, 121 S. Ct. 1106 (2001) (inmate's subjective belief that there was no point in pursuing a grievance does not permit him to proceed without first exhausting his administrative remedies).

The Eighth Circuit has recognized that the Arkansas Department of Correction procedure explicitly informs inmates that they must "**name all parties** during the grievance process," otherwise they "may have their lawsuit or claim dismissed by the court ... for failure to exhaust against all parties." Burns v. Eaton, 752 F.3d 1136, 1141 (8th Cir. 2014) (emphasis added). In Burns, the inmate filed a grievance against Officer Burns regarding his specific conduct during a pepper spray event, but did not name another officer, White, who he alleged did not allow him to wash off the pepper spray. Burns filed a grievance regarding the incident in which he expressly named Defendant Eaton and the issue of being pepper sprayed.

The Court recognized that the ADC decided only the merits of the grievance against the named officer, Burns, but *was not asked* to evaluate the conduct of the unnamed officer, White. The Eighth Circuit held that, because plaintiff did not name the defendant in an underlying grievance, plaintiff was not permitted to assert a § 1983 claim against that defendant in federal court because those claims were not administratively exhausted. Burns at 1141-1142.

The Burns Court held:

> In this case, Burns did not name White or complain that he was not allowed to wash off the pepper spray. **In the grievance process, ADC obtained an incident report from White *regarding the complaint against Eaton*, and ADC decided only the merits of that grievance. ADC was not asked to evaluate the conduct of White** or the distinct § 1983 claims first asserted by

> Burns in his amended complaint. Although Eaton and White **were both involved in the incident, they had different responsibilities and took different actions.** Thus, this was not a case where "prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits." Reed-Bey v. Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010). Rather, the amended complaint against White asserted "a new grievance...completely unexhausted." King v. Iowa Dept. Of Corr., 598 F.3d 1051, 1053 (8th Cir.), cert denied, 131 S. Ct. 499 (2010). The district court properly dismissed the claims against Cpl. White for failure to exhaust.

Id. (emphasis added).

In Champion v. Akins, 498 Fed. Appx. 670 (8th Cir. 2013) (per curiam) (unpublished opinion) the Eighth Circuit held that the grievance has to *explain the substance of the individual's involvement* in the grieved incident, as outlined in the ADC's grievance procedure. See also Doc. 50, p. 3, § E(2). In Champion, although three people were identified in the grievance at issue (two wardens and an officer), the plaintiff only *grieved* about how the officer was involved in the incident. The Court differentiated being *the subject* of the grievance and being addressed in the grievance as follows:

> Champion did not exhaust his administrative remedies as to defendants Warden Burl and Warden Ball. While he addressed them as readers in his grievances about Akins, he did not state in any exhausted grievance **how Burl and Ball were involved in the grieved incidents**, **as required by the Arkansas Department of Correction grievance policy**. See 42 U.S.C. § 1997e(a) (prisoner must exhaust administrative remedies before bringing suit under federal law); Jones v. Bock, 549 U.S. 199, 218 (2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements . . . that define the boundaries of proper exhaustion.").

Id. (Emphasis added).

Similarly, in Townsend v. Murphy, 898 F.3d 780, 784 (8th Cir. 2018) the 8th Circuit found that, because the ADC prisoner-plaintiff failed to mention two defendants in his informal complaint (the initial step before the formal grievance), the plaintiff limited the ability of the ADC to

investigate the claim pursuant to the grievance process. The Court held that, despite the procedure and actual form instructing the inmate to identify personnel involved, he "made no mention [in his informal complaint] of [the two defendants], nor of the specific factual allegations that would later appear in his federal complaint..."; thus, he did not exhaust his administrative remedies against them.

Thus, the law is clear that not only does the grievance have to name everyone, it has to actually explain the substance of the individual's involvement, as outlined in the ADC's grievance procedure. The failure to follow the procedure must result in dismissal of unexhausted claims.

### 2. THE FACTS

Plaintiff, while incarcerated, filed his 42 U.S.C. § 1983 Complaint on January 15, 2020, alleging a violation of his constitutional rights. Statement of Facts No. (SOF) 1. Plaintiff claimed that, beginning May 21, 2019, defendants denied him specialty referrals, pain medication, a shower chair, a wheelchair, and medical authorizations script renewal for a double mattress, lower tier/lower bunk, a back brace, a knee brace, and orthopedic shoes/insoles. SOF 2.

The ADC has a grievance procedure in place and available to inmates incarcerated within the ADC. SOF 14. Per procedure, at the unit level, an inmate first files an Informal Resolution to resolve a problem. The inmate must complete and submit a Unit Level Grievance Form Step One: Informal Resolution within 15 days after the occurrence of the incident to include the date that the Unit Level Grievance Form is being completed. SOF 15.

The procedure advises inmates that they must specifically name each individual involved in order that a proper investigation and response may be completed. The procedure requires an inmate to be specific as to the *substance* of the issue and include the date, place and personnel involved. SOF 16.

Procedure requires that the informal resolution/grievance be limited to one problem/ issue.

If multiple issues are raised, only one issue, the main issue, will be investigated. Additional issues are not considered exhausted at the end of the process. SOF 17. Additionally, procedure restricts excessive use of the process, which may include rejection of duplicates of a grievance previously submitted with regard to the same staff, dates, and subject matter. SOF 18.

A problem solver investigates the informal resolution complaint (Step One) and provides a written response at the bottom of the form. If the inmate is not satisfied with the resolution, or if he receives no resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. SOF 19.

If an inmate submits a grievance of a medical nature, that grievance is forwarded to the appropriate medical personnel for response. SOF 20. If the inmate is not satisfied with the medical response, or if he fails to receive a response, he may appeal to Deputy Director Griffin. The inmate must state a reason for the appeal, and must date, sign, and write the inmate's ADC number on the attachment being appealed. SOF 21. The grievance procedure prohibits inmates listing additional issues, requests, and/or names on appeal which were not part of the original grievance as they will not be addressed. SOF 22.

Assuming the appeal follows procedure, upon receiving an appeal, the Deputy Director reviews the grievance along with any records necessary to respond. A response is then provided to the inmate. At that point, once the Deputy Director has issued a response on the merits, the grievance process is deemed exhausted. SOF 23.

Plaintiff exhausted eight (8) medical grievances after May 21, 2020, which received an appeal response on the merits before he filed his complaint: VSM19-01579, VSM19-01605, VSM19-01677, VSM19-01769, VSM19-01925, VSM19-02051, VSM19-02052, and VSM19-02377. SOF 24.

Plaintiff alleged that he fell in his cell on May 21, 2019, and after a few sick call requests and another fall, he was seen by the director of nurses and Ms. Jones. Plaintiff claims they called Ms. Bland on the phone but she would not see him. He claims that was the 3rd time she refused to see him and cited grievance VSM19-01677. SOF 3. In VSM19-01677, however, plaintiff grieved that he fell on June 18, 2019, and was being seen by Nurse Austin when she noticed his leg and knee were swollen and called Ms. Bland. Nurse Austin then documented her conversation with Ms. Bland. **The events of June 18, 2019, were exhausted**. SOF 27.

Plaintiff alleged that Ms. Bland refused to examine plaintiff on June 10, 2019, and that she refused to order pain medication or hemorrhoidal ointment and cited VSM19-01579 in support of his allegation. SOF 4. In VSM19-01579, plaintiff grieved that APN Bland failed to treat him on June 10, 2019, relating to back pain to the point he cannot walk without falling, the need for pain medicine, needing hemorrhoid cream, and wanting to see an orthopedist about his back. **The June 10, 2019, encounter with Ms. Bland was exhausted**. SOF 25.

Nothing between May 21 and June 9, 2019, was exhausted.

Plaintiff alleged that both defendants refused to honor his request for an x-ray on his knees and his left hip. SOF 9. He alleged that Ms. Bland informed Dr. Smith (at Dr. Smith's arrival at the unit) that plaintiff was faking his injury; therefore, Dr. Smith never examined plaintiff before refusing him a wheelchair, a shower chair, and the right to see a specialist to "fix the hole" in his spinal cord. SOF 10. These issues appear to have been addressed in VSM19-01769 as to plaintiff's **encounters with Dr. Smith on June 21 and June 28, 2019.** This issues relating to a wheelchair, shower chair, and faking an injury were not exhausted as to Ms. Bland.

Plaintiff alleged he was promised a shower chair evaluation and never received it. He cited grievance VSM19-01605 in support. SOF 5. VSM19-01605 was considered to be a duplicate of

VSM 19-01579. SOF 26. *The shower chair issue was not exhausted.*

Plaintiff's cited to grievances VSM19-01677 and VSM19-01769 as supporting his allegation that he was unable to stand up at diabetic call on June 18, 2019, and was denied medical treatment by Ms. Bland, and that he complained he could not walk. SOF 6. In VSM19-01769, plaintiff grieved that Ms. Bland denied him medical attention on June 10 and June 18, 2019. The Deputy Director considered the main issue, which was stated against Ms. Bland, and determined that plaintiff was past the allotted time to grieve about June 10, and he found that June 18 had already been addressed in VSM 19-01677, referenced above. SOF 28.

Plaintiff cited grievance VSM19-01925 to support his allegation that Ms. Bland changed his insulin dose, raised it, and was trying to put him into a diabetic coma. SOF 7. In VSM19-01925, plaintiff grieved that he needed a wheelchair and that he falls without one. The investigation of the grievance and plaintiffs encounters with Dr. Smith on July 19, 2019, and July 25, 2019, or reviewed. SOF 29. *The insulin claim was not exhausted.*

Plaintiff alleged that he needed a wheelchair and a shower chair but was denied both. SOF 8. Plaintiff did not exhaust a grievance complaining about not having a shower chair through the Deputy Director, as it was only mentioned in a grievance with multiple issues. See VSM19-02377 discussed *supra*.

Plaintiff alleged that both defendants refused him medical treatment by an off-site provider, and that Dr. Smith gave him a walker when plaintiff could not even stand up. Plaintiff cited to VSM19-02051 and VSM19-02052 in support of his allegations. SOF 12.

In VSM19-02051, plaintiff grieved that he needed a wheelchair. **Plaintiff's evaluation by Dr. Smith on July 19, 2019**, was investigated. SOF 30. Further, in VSM19-02052 plaintiff grieved (1) that the walker Dr. Smith prescribed was insufficient because he continued to fall and (2) that

Dr. Smith and a Ms. Bland want to take away his gabapentin. The main, first issue regarding Dr. Smith's treatment of plaintiff was evaluated and the **encounters with Dr. Smith on June 28, July 19, and July 25, 2019**, were reviewed. SOF 31. The claim that Ms. Bland wanted to take away his gabapentin was not exhausted.

Plaintiff alleged that Dr. Smith told plaintiff that an x-ray showed nothing was wrong with him, when it actually showed a spinal fracture. SOF 11. Plaintiff claimed defendants denied him medical treatment and medical equipment for his medical needs and cited grievance VSM19-02377 in support of his allegation. SOF 13.

In VSM19-02377, initiated September 9, 2019, plaintiff grieved multiple issues, including a claim that Dr. Smith denied him an x-ray for his knees, denied him a wheelchair, and denied him a shower chair. The Deputy Director follow procedure and evaluated the grievance only as to the 15 days prior to his submission of the informal resolution relating to plaintiff's encounter with Dr. Smith on August 28, 2019, regarding *urinary* complaints. The additional issues concerning an x-ray, a wheelchair, a shower chair, or plaintiff's ability to walk were not issues during that visit and were not investigated. Thus, *this grievance is irrelevant* to plaintiff's complaint. SOF 32.

As to Ms. Bland, the events of June 18, 2019, were exhausted, as was plaintiff's June 10, 2019, encounter with Ms. Bland. The issues relating to a wheelchair, a shower chair, taking gabapentin, increasing plaintiff's insulin to put him in a coma, and telling Dr. Smith that plaintiff was faking an injury were not exhausted as to Ms. Bland.

As to Dr. Smith, plaintiff's encounters with him on June 21, June 28, July 19, and July 25, 2019, were exhausted. No other claim against Dr. Smith was exhausted.

The shower chair claim was not exhausted as to any defendant.

Plaintiff failed to properly exhaust his available administrative remedies pursuant to the

Prison Litigation Reform Act (PLRA) prior to bringing this action as to his *all* of his allegations against defendants. Plaintiff's failure to follow procedure to exhaust any conduct of Ms. Bland beyond June 10 and 18, 2019, prevented Mr. Griffin (the ADC) from investigating plaintiff's complaint allegations fully. Likewise, plaintiff's failure to properly follow procedure to exhaust the conduct of Dr. Smith beyond the encounters on June 21, 28, July 19, and 25, 2019, prevented investigation as well. Thus, pursuant to Ross v. Blake, Burns v. Eaton, Champion v. Akins, and Townsend v. Murphy, *supra*, plaintiff's failure to follow procedure must result in partial dismissal of plaintiff's complaint.

## V. CONCLUSION

Because plaintiff failed to exhaust each of his claims as to all time frames, all unexhausted claims/time frames must be dismissed as a matter of law. Therefore, defendants request that their motion for partial summary judgment be granted; that the claim against Ms. Bland be limited to June 10 and June 18, 2019; that the claim against Dr. Smith be limited to June 21, June 28, July 19, and July 25, 2019; and that the shower chair claim and the insulin claim be dismissed.

Respectfully submitted,

Michelle B. Odum

Michelle Banks Odum, #94135
HUMPHRIES, ODUM & EUBANKS
Attorneys for Medical Defendants
1901 Broadway St.
Little Rock, AR 72206
Telephone: 501.420.1776
Email: michelle@humphrieslaw.net

**CERTIFICATE OF SERVICE**

      I, Michelle Banks Odum, hereby certify that on May 27, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification to anyone registered in this case to receive such filings. I further certify that on May 28, 2020, I mailed the foregoing document and a copy of the Notice of Electronic Filing (NEF) by U.S. Mail to the following non-CM/ECF participant:

Willie J. Starr, ADC # 109194
VARNER SUPERMAX
Post Office Box 400
Grady, AR 71644-0400

                                                Michelle Banks Odum