**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

WILLIE J. STARR
ADC # 109194                                                                                    PLAINTIFF

v.                                          **NO. 4:20-CV-00064 JM/JTK**

ESTELLA BLAND and DR. AARON M. SMITH                              DEFENDANTS

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Plaintiff, an inmate incarcerated in the Arkansas Division of Correction (ADC),  filed this 42 U.S.C. § 1983 cause of action on January 15, 2020, alleging that Estella Bland and Dr. Aaron M. Smith  (collectively "defendants") were deliberately indifferent to his serious medical needs in violation of his constitutional rights. He also referenced state law medical malpractice and the Americans with Disabilities Act (ADA).  See Document (Doc.) 2-1.

Plaintiff stated he suffers from degenerative disc disease, with rods, pins, and screws in his back from surgeries. He also stated that he is diabetic with diabetic nerve pain. Doc. 2-1.  Plaintiff's claims were narrowed after an exhaustion evaluation to claims relating to defendants' treatment decisions at the ADC's Varner Unit in June and July of 2019. Docs. 53, 57.

With regard to Ms. Bland, plaintiff claimed that he fell in his cell on May 21, 2019, and was referred to see Ms. Bland on June 10, 2019. He claimed Ms. Bland refused to examine and treat him relating to his fall, refused to prescribe him any pain medication, and would not re-order his hemorrhoidal ointment. Docs. 2-1, 53, 57.  He claimed that he fell again on June 18, 2019, and a nurse called Ms. Bland, but Ms. Bland refused to treat him and ordered that his knee brace be taken. He claimed Ms. Bland also threatened to take away his gabapentin. Id.  He is suing Ms. Bland for

her decisions on June 10 and June 18 and allegedly threatening to discontinue his Gabapentin. Id.

With regard to Dr. Smith, plaintiff claimed that Dr. Smith promised him x-rays on June 21 and June 28, 2019, but did not follow through. He claimed Dr. Smith denied him a wheelchair July 19, 2019, and forced him to use a walker. He claimed Dr. Smith threatened to take away his Gabapentin. Id.

A non-party physician has opined that the care and treatment plaintiff received from defendants was appropriate and within the standard of care.  Because there are no genuine issues of material fact relating to this motion, defendants are entitled to summary judgment as a matter of law. Therefore, because the record establishes that there are no genuine issues of material fact in dispute, defendants are entitled to judgment as a matter of law. Defendants respectfully request that the Court grant their motion for summary judgment and dismiss plaintiff's complaint with prejudice.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if there are no disputed issues as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Medical Liability Mut. Ins. Co. v. Alan Curtis LLC, 519 F.3d 466, 471 (8th Cir. 2008).  The Court must view the evidence in the light most favorable to the non-moving party and determine whether all of the evidence points one way, giving him the benefit of all reasonable factual inferences. Moore v. Indehar, 514 F.3d 756, 758 (8th Cir. 2008).  A plaintiff must establish a clear violation of a constitutional right to prevail upon a section 1983 claim.  Mahers v. Harper, 12 F.3d 783, 785 (8th Cir. 1993).

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court articulated guidelines for applying Rule 56 to defense motions for summary judgment stating, "the plain language of Rule 56C mandates the entry of summary judgment, after adequate time for discovery and upon motion, against

a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." Celotex at 322. The Court explained that, in such a situation, "there could be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex at 322-23.

Therefore, once a motion is made, the burden shifts to the Plaintiff to offer "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992) (quoting Barnes v. Arden Mayfair, Inc., 759 F.2d 676, 681 (9th Cir. 1985). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

Moreover, if the plaintiff fails to demonstrate the existence of a genuine issue of material fact by offering significant probative evidence, defendants are entitled to judgment in their favor as a matter of law. Pentel v. City of Mendota Heights, 13 F.3d 1261, 1263 (8th Cir. 1994). A non-movant has an obligation to present affirmative evidence to support his claims. Settle v. Ross, 992 F.2d 162, 163 (8th Cir. 1993).

In this instance, the undisputed material facts, supported by admissible evidence, prove that defendants are entitled to judgment as a matter of law. Plaintiff has no evidence to the contrary which would create a genuine issue of material fact. Therefore, summary judgment in favor of defendants is appropriate as a matter of law.

### III.  STATEMENT OF FACTS

Defendants have filed a separate statement of facts with supporting admissible evidence. Those facts are adopted herein, incorporated by reference, and set forth in the argument below.

# IV. ARGUMENT

## A. DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS

### 1. THE LAW

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97 (1976). Deliberate indifference can be manifested by prison doctors in their response to the prisoner's serious medical needs or by prison officials in intentionally denying or delaying access to medical care or interfering with prescribed treatment. Id. at 104-05.

To prevail in this action, plaintiff must show that defendants acted with deliberate indifference to her serious medical needs. Estelle v. Gamble, 429 U.S. at 104-06. He must prove that: (a) "the deprivation alleged . . . [is] objectively, 'sufficiently serious'"; and (b) "the official had a "sufficiently culpable state of mind," or "deliberate indifference" to the health of the inmate. Farmer v. Brennan, 511 U.S. 825, 834 (1994). There must be actual knowledge of the risk of harm, followed by deliberate action amounting to callousness. Bryan v. Endell. 141 F.3d 1290, 1291 (8th Cir. 1998). An actual subjective knowledge of the risk of harm is necessary to a finding of deliberate indifference. See Farmer 511 U.S. at 837. To find an Eighth Amendment violation, the deliberate indifference must rise to the level of an unnecessary and wanton infliction of pain. Jordan v. Farrier, 788 F.2d 1347, 1348 (8th Cir. 1986). A prisoner must show evidence of action with malicious and sadistic intent, or with deliberate indifference. Moody v. Proctor, 986 F.2d 239, 241-42 (8th Cir. 1993). Deliberate indifference requires a highly culpable state of mind approaching actual intent. Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993).

A plaintiff is required to present evidence "that the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of the

Eighth Amendment right to be free from cruel and unusual punishment." Dulany v. Carnahan, 132 F.3d 1234 (8th Cir. 1997) citing Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990)(internal quotations omitted). An inmate must show both an objective element (that the need and the deprivation was serious) and a subjective element (that the defendant acted with a sufficiently culpable state of mind). See Choate, 7 F.3d at 1374.

"[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992). "Prison health officials are given great latitude in formulating treatment plans, and differences of opinion, as a matter of law, do not amount to a constitutional violation." Charette v. Connolly, No. C03-0023-MWB, 2004 U.S. Dist. LEXIS 15094 at 50-51 (N.D. Iowa Aug. 4, 2004) citing Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985) (emphasis added). Prison medical personnel are entitled to exercise their medical judgment. Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987), cert. denied, 484 U.S. 1014 (1988).

The plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted). Medical malpractice is not deliberate indifference. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997); Estelle, 429 U.S. at 106. See also Pietrafeso v. Lawrence County, S.D., 452 F.3d 978, 983 (8th Cir. 2006) (deliberate indifference requires more than negligence or a mere disagreement with the provider's medical decisions). Deliberate indifference "requires proof of a reckless disregard of the known risk." Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011) quoting Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998) (emphasis added). Deliberate indifference requires even more than "gross negligence". Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995) Deliberate indifference

requires a highly culpable state of mind approaching actual malicious and sadistic intent.  Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993) and Moody v. Proctor, 986 F.2d 239, 241-42 (8th Cir. 1993). There must be actual knowledge of the risk of harm, followed by deliberate action amounting to callousness.  Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998).

"In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." Dulany, 132 F.3d at 1240 (emphasis added).  Medical speculation is not sufficient to overcome a  motion for summary judgment.  Dulany, 132 F.3d at 1241-1242.  Rather, sufficient evidence must be submitted "that defendants ignored 'an acute or escalating situation' or that the delays adversely affected" the prognosis.  Sherrer v. Stephens, 50 F.3d 496 (8th Cir. 1994). See also Coleman v. Rahija, *supra*, (inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in treatment precludes a claims of deliberate indifference to medical needs.) An inmate complaining that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in order to succeed.  Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995); see also Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997).

### 2.      FACTS & ANALYSIS

Plaintiff, an inmate incarcerated in the Arkansas Division of Correction (ADC),  filed this 42 U.S.C. § 1983 cause of action on January 15, 2020, alleging that defendants were deliberately indifferent to his serious medical needs in violation of his constitutional rights. Plaintiff's claims were narrowed after an exhaustion evaluation to claims relating to defendants' treatment decisions at the ADC's Varner Unit in June and July of 2019. Statement of Fact No. (SOF) 1.

Plaintiff claimed that he fell in his cell on May 21, 2019, and was referred to see Ms. Bland on

June 10, 2019. He claimed Ms. Bland refused to examine and treat him relating to his fall, refused to prescribe him any pain medication, and would not re-order his hemorrhoidal ointment. SOF 2. Plaintiff claimed that he fell again June 18 and a nurse called Ms. Bland, but she refused to treat him and ordered his knee brace be taken. Id. He is suing Ms. Bland for her decisions on June 10 and June 18 and allegedly threatening to discontinue his Gabapentin. SOF 3.

Plaintiff claimed that Dr. Smith promised him x-rays on June 21 and June 28, 2019, but did not follow through. He claimed Dr. Smith denied him a wheelchair July 19, 2019, and forced him to use a walker. He claimed Dr. Smith threatened to take away his Gabapentin. SOF 4.

Gary R. Kerstein, a Doctor of Osteopathic Medicine licensed by the State of Arkansas, evaluated the treatment provided to plaintiff relating to his complaint allegations in order to offer his medical opinions as to the providers' medical treatment decisions, stated to a reasonable degree of medical certainty. He based his opinions upon his review of the prison medical records, his education, and his experience. SOF 5.

Plaintiff was seen in the infirmary on Friday, May 30, 2019, for a complaint of back pain and leg weakness. He subjectively stated that he had fallen on Monday and Tuesday and was afraid he had loosened hardware in his back. The nurse noted that he *ambulated* with a wheel walker with *no signs of distress*. She observed *no signs of bruising or marks* from the alleged fall. She noted he was already taking Tylenol and she added naproxen for a few days. SOF 6.

On June 4, 2019, plaintiff was seen again in sick call complaining of back pain and leg weakness, with added numbness in his leg and feet. The nurse noted that plaintiff had *no difficulty with ambulating* and she referred him to a provider. SOF 7.

On June 10, 2019, plaintiff was seen during a sick call encounter with Ms Bland for his listed complaint of bilateral lower extremity numbness. He also requested renewal of his hemorrhoidal

cream. Ms Bland visually observed and noted his posture, leaning forward on his walker and requiring no assistance with positioning. While plaintiff stated his legs gave out on him during his walk from his cell, Ms Bland noted that security contradicted that statement stating plaintiff ambulated the whole way from his cell to the infirmary with the assist of his walker only, and without difficulty. Ms. Bland noted that plaintiff refused to participate with the musculoskeletal exam. He indicated to security that he was unable to use his walker and he was returned to his cell in the restraint chair. SOF 8.

When a patient refuses to participate with a physical exam, the provider is unable to make an objective assessment. In this instance, the only information Ms. Bland had were the contradictory statements between plaintiff and security personnel relating to plaintiff's subjective complaint relating to his ability to ambulate. In Dr. Kerstein's medical opinion, Ms Bland treated plaintiff appropriately on June 10th. He saw nothing wrong with her medical decisions and noted that she did renew his hemorrhoidal ointment. SOF 9.

Plaintiff was seen by a nurse on June 18, 2019, claiming that he had lost all feeling in his lower body. It was noted that he slipped on his floor that morning getting out of bed and that he was slow getting up. He complained of back pain and left knee and leg pain. He was noted as stating that he had submitted a sick call and was to be seen about it the following day. The nurse noted that Ms Bland was notified of the incident and informed of slight swelling and hardness in plaintiff's left side lower extremity. The nurse then noted Ms. Bland's verbal instructions. SOF 10. According to Dr. Kerstein, Ms. Bland gave appropriate instructions on June 18 for plaintiff to return to his cell and elevate his feet to assist with reduction of swelling. SOF 11.

Ms. Bland also was noted as giving instructions for plaintiff's knee brace to be removed from his possession if he did not have a script for it. Dr. Kerstein was confused by the nurse's note until he looked back in the records and saw that an old 2017 script for a knee brace had indeed been terminated

well before this encounter. SOF 12. Dr. Kerstein verified that plaintiff had no active script for the knee brace in June 2019; therefore, it was appropriate to remove the brace from his possession. Further, the knee brace was not an issue thereafter. Plaintiff was provided naproxen for pain. SOF 13.

Dr. Kerstein opined that there was no need for plaintiff to be seen that day, June 18, 2019, by a provider, e.g. Ms. Bland. The nurse made no note that plaintiff was unable to move. She did not note that he appeared to have suffered any injury. She did not note any physical exam other than vital signs and her sole observation of slight swelling/hardness to his left leg. She did not indicate that he needed to be seen at that moment and, in fact, did not refer him to a provider. Finally, plaintiff was not noted as requesting to see a provider; rather, he stated he was already scheduled to be seen the following day. Ms. Bland's instructions to retrieve the unauthorized knee brace and for plaintiff to elevate his feet were medically appropriate. SOF 14.

Dr. Smith saw plaintiff on June 21, 2019. Plaintiff presented in a wheelchair complaining of back pain, knee pain, and bilateral lower extremity numbness. Plaintiff requested a shower chair. Plaintiff stated he lost motor function in his lower extremities causing him to fall. He stated that he did not have sensation, but denied loss of bowel or bladder function and denied numbness in the perineal region. SOF 15.

Dr. Smith conducted a thorough exam on June 21, noting that plaintiff's cranial nerves were intact, that his heart sounded fine, that his lungs sounded fine, and that is abdomen was neither tender nor distended. He was able to wiggle his toes, his leg musculature was well developed, he had no sores and no muscle fasciculations. Dr. Smith appropriately assessed plaintiff as having likely degenerative disc disease of the lumbar spine and sciatica; however, he also noted that plaintiff's symptoms were inconsistent with the recognizable pathology. SOF 16.

Dr. Kerstein opined that Dr. Smith's June 21 findings did not justify a shower chair

authorization. This was later confirmed by lumbar x-ray. SOF 17. In Dr. Kerstein's medical opinion, he saw nothing inappropriate with regard to Dr. Smith's examination, care, and treatment of this patient on June 21. SOF 17.

On June 28, 2019, Dr. Smith saw plaintiff again for his complaint of loss of motor function in his lower extremities, shoulder pain, hip pain and numbness below the waist. During Dr. Smith's physical examination, plaintiff was able to move his lower extremities and he was noted to recoil when Dr. Smith palpated his lower left ankle. Dr. Smith did note swelling of the left lower extremity, which was painful to deep palpation, although not with dorsiflexion of the ankle joint. Again, plaintiff was noted as having good muscular development below the waist. The remainder of the exam remained unremarkable. SOF 17.

Dr. Smith assessed plaintiff, stating as follows:

> It is difficult to determine the patient's pathology given his inconsistent history of present illness. He appears to have multiple musculoskeletal complaints chronic low back pain chronic shoulder pain. Though he states he cannot move his legs nor feel them, he demonstrates both motor and sensory functions in bilateral lower extremities. His left lower extremity is genuinely edematous with pain on palpation compared to the right.

SOF 19. Dr. Kerstein opined that Dr. Smith appropriately ordered blood work to determine pathology of the swelling. SOF 20.

In Dr. Kerstein's opinion, Dr. Smith conducted another good exam of plaintiff on July 28. Dr. Kerstein agreed that Dr. Smith's objective findings were inconsistent with plaintiff's subjective complaints. Dr. Kerstein saw nothing inappropriate with Dr. Smith's medical treatment and judgment on June 28. SOF 21.

Dr. Smith gave a verbal order for an x-ray of the lumbar spine on July 16, 2019. From Dr. Kerstein's review of the x-ray report, it basically revealed that plaintiff had mild arthritis and that the

hardware in his back was intact. According to Dr. Kerstein, there is nothing on x-ray which would cause the subjective complaints made by plaintiff. SOF 22.

Dr. Smith saw plaintiff after the x-ray on July 19, 2019, for x-ray review and wheelchair evaluation. Dr. Smith noted that there was no change in the physical examination, that plaintiff's leg remained well developed and, upon physical examination, his motor and sensory functions were intact. In other words, there was no evidence of muscle wasting and no evidence that plaintiff had lost nerve function. Plaintiff stated that his recent fall was the reason that he needed a wheelchair. Dr. Smith, however, noted his medical assessment that plaintiff had no physical limitation requiring a wheelchair as confirmed by both the imaging report and physical exam. Dr. Smith informed plaintiff that there were no acute or unstable findings in the x-ray, that there was no need for a wheelchair at that time, and that he would be reevaluated at the next chronic care clinic or physical exam. Dr. Smith prescribed hemorrhoidal ointment. SOF 23.

In Dr. Kerstein's medical opinion, Dr. Smith again made appropriate medical treatment decisions on July 19, utilizing his medical judgment while evaluating both the diagnostic findings and his professional medical findings on physical exam. Dr. Kerstein saw nothing wrong with Dr. Smith's treatment decisions. SOF 24.

On July 25, 2019, Dr. Smith issued an authorization for plaintiff to have a new walker. SOF 25. In Dr. Kerstein's opinion, Dr. Smiths' decision to provide plaintiff with a walker instead of a wheelchair was appropriate, considering the objective findings, and in the best interest of plaintiff in order to maintain strength and mobility. SOF 26.

With regard to gabapentin, plaintiff continued to receive it throughout this time period. SOF 27. Dr. Kerstein reviewed the institutional record and verified that plaintiff received gabapentin throughout 2019. SOF 28.

Dr. Kerstein found that there is nothing documented in the records which reflects that Dr. Smith determined that plaintiff needed any x-rays during either June 2019 encounter, particularly when the objective physical findings did not correlate with plaintiff's subjective complaints. Dr. Kerstein did not see anything in the record to have indicated a medical need for an x-ray in June. SOF 29.

Per Dr. Kerstein, when Dr. Smith gave a verbal order for a lumbar x-rays in July, the subsequent results revealed that there was nothing which would cause his particular subjective complaints. Plaintiff had no objective findings to indicate a need for any other type of x-ray or diagnostic testing. He also had no objective findings to indicate a need for a wheelchair in either June or July 2019. SOF 30. Dr. Kerstein verified that plaintiff received both gabapentin and hemorrhoid ointment during this time period. SOF 31.

Dr. Kerstein stated his medical opinion, to a reasonable degree of medical certainty, that plaintiff had appropriate access to healthcare and that Dr. Smith and Ms. Bland provided him with appropriate treatment within the standard of care for his subjective complaints. SOF 32.

Dr. Kerstein stated his medical opinions that Dr. Smith and Ms. Bland provided appropriate medical care to plaintiff during their encounters with him. Plaintiff has no evidence of deliberate indifference on the parts of defendants. Dr. Kerstein's medical opinions in this case confirm that defendants did nothing medically wrong relating to plaintiff's complaint allegations. Their medical care and treatment decisions were appropriate *and within the standard of care*, i.e. not negligent. Plaintiff has no evidence to the contrary. He certainly has no evidence that any perceived delay in treatment or wheelchair script detrimentally affected is health. Therefore, plaintiff's claims against defendants must fail and his complaint must be dismissed with prejudice as a matter of law.

B.    AMERICANS WITH DISABILITIES ACT

Plaintiff also brought a claim pursuant to the ADA.  Plaintiff alleged that defendants (there were

originally nine (9), including five (5) ADC defendants) "failed to advise staff members to accommodate

his disabled condition..." Doc. 2-1 at 13, ¶ 26. He continued to complain about ADC facilities. Id. at

14, ¶¶ 29-31.

Plaintiff may not pursue a claim against these medical defendants, a doctor and a nurse

practitioner, based upon their medical treatment decisions. Burger v. Bloomberg, 418 F.3d 882, 883

(8th Cir. 2005). Further, the medical defendants are independent medical contractors, not state

employees responsible for ADC facilities. For these reasons, plaintiff's ADA claims must be dismissed.

## V.  CONCLUSION

The evidence in this case precludes the need for a trial.  The record establishes that there are

no genuine issues of material fact in dispute and that defendants are  entitled to judgment as a matter

of law.  Therefore, defendants respectfully request that the Court grant their motion for summary

judgment and dismiss plaintiff's complaint.

Respectfully submitted,

Michelle Banks Odum, #94135
HUMPHRIES, ODUM & EUBANKS
Attorneys for Medical Defendants
1901 Broadway St.
Little Rock, AR 72206
Telephone: 501.420.1776
Email: michelle@humphrieslaw.net

## CERTIFICATE OF SERVICE

I, Michelle Banks Odum, hereby certify that on February 19, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification to anyone registered in this case to receive such filings. I further certify that on February 20, 2021, I mailed the foregoing document and a copy of the Notice of Electronic Filing (NEF) by U.S. Mail to the following non-CM/ECF participant:

Willie J. Starr, ADC # 109194
Varner Supermax
Post Office Box 400
Grady, AR 71644-0400

Michelle Banks Odum